# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PROTECTIVE LIFE INSURANCE COMPANY,<br><br>              Plaintiff,<br><br>   v.<br><br>WELLS FARGO BANK, N.A., as securities intermediary,<br><br>             Defendant. | Misc. No. _____<br><br>D.D.C. Case No. 20-cv-2101 |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO COMPEL PRODUCTION BY THIRD-PARTIES PFP FUNDING I LLC, PFP FUNDING II LLC, CHC FINANCIAL LLC, COVENTRY FIRST LLC, AND COVENTRY CAPITAL I LLC**

Plaintiff, Protective Life Insurance Company ("Protective Life"), hereby submits this Memorandum of Law in support of its Motion to Compel Production by Third-Parties Coventry First LLC, Coventry Capital I LLC, PFP Funding I LLC, PFP Funding II LLC, and CHC Financial LLC, (the "Coventry Entities") to respond and produce documents pursuant to the document subpoenas served upon the Coventry Entities by Protective Life (the "Subpoenas").

**I.    INTRODUCTION AND SUMMARY OF THE FACTS**

    **A.  The Underlying Action**

The underlying Action is a stranger-originated life insurance ("STOLI") case arising under Delaware law that is currently pending in the District Court for the District of D.C. The Complaint—which seeks a declaration that a $2 million life insurance policy issued by Protective Life insuring the life of Nelson Deckelbaum (the "Policy") was an illegal human life wager that

3

lacked insurable interest at inception—alleges that the Policy is void *ab initio* because it was manufactured through a now-notorious STOLI scheme run in the 2000s by the Coventry Entities.

Over the better part of the last decade, at least eleven federal judges have analyzed policies procured through Coventry's STOLI program under Delaware law, and each and every one of them has concurred that they lacked insurable interest on summary judgment as a matter of Delaware law. *See, e.g.*, *See Sun Life v. U.S. Bank*, 2016 WL 161598 (S.D. Fla. Jan. 14, 2016), *aff'd on all substantive issues* 693 F. App'x 838 (11th Cir. 2017) ("*Malkin*") (granting summary judgment to insurance company and declaring policy procured through Coventry's STOLI program void *ab initio* under Delaware law); *U.S. Bank v. Sun Life*, 2016 WL 8116141 (E.D.N.Y. Aug. 30, 2016), *adopted in full* 2017 WL 347449 (E.D.N.Y. 2017) ("*Van de Wetering*") (same); *Sun Life v. U.S. Bank*, 369 F. Supp. 3d 601 (D. Del. 2019), *recon. denied* 2019 WL 2052352 (D. Del. May 9, 2019) ("*Sol*") (same); *Estate of Malkin v. Wells Fargo Bank*, 379 F. Supp. 3d 1263 (S.D. Fla. 2019), *aff'd on this issue by* __ F.3d __, 2021 WL 2149344 (11th Cir. May 27, 2021) ("*Estate of Malkin*") (similar); *see also Sun Life v. Wells Fargo Bank*, 2020 WL 1503641 (N.D. Ill. March 30, 2020) ("*Corwell*") (granting summary judgment to insurance company and declaring policy procured through Coventry's STOLI program void *ab initio* under (similar) Illinois law).[1]

The Complaint at issue here was filed in 2020 by a group of attorneys at Cozen O'Connor P.C. ("Cozen O'Connor" or "the Firm"), who joined Cozen O'Connor in April 2018 from the law firm of Drinker Biddle & Reath LLP (the "Litigation Team"). The Litigation Team has been litigating Coventry STOLI cases for many years, starting at least as early as 2014 when the Litigation Team was still with Drinker Biddle. In fact, all of the aforementioned Coventry STOLI

---

[1] Given the similarity of the parties across many STOLI cases, these cases are often referred to, as here, by the name of the underlying insured.

cases were filed and then litigated (in whole or in part) by the Litigation Team while they were with the former firm. It was through discovery in these prior cases that the Litigation Team learned about the Coventry STOLI program; how Coventry stores its documents; and which categories of Coventry documents are needed to litigate these cases. The Litigation Team has been subpoenaing and obtaining these documents from the Coventry Entities—using substantially similar document subpoenas—for many years, including many years before the Litigation Team came to Cozen O'Connor.

In a nutshell, these subpoenas seek three categories of documents all of which have been used by the courts in rendering their respective summary judgment decisions, namely (i) the transaction documents specific to the insured in question (which show, among other things, that Coventry paid the premiums and exercised control over the transaction); (ii) Coventry's internal and external emails and communications logs (which show, among other things, Coventry's intent to acquire the policy before it even existed); and (iii) the documents memorializing the infrastructure of the Coventry STOLI program (which show, among other things, that the Coventry program was designed for the purpose of using insureds to take out policies for Coventry that Coventry could not take out itself and the clandestine manner in which Coventry did this). The Subpoenas at issue in this case were derived from the subpoenas issued in these past cases.

Before the Litigation Team began winning Coventry STOLI cases, the Coventry Entities were at least somewhat cooperative complying with document subpoenas. But as the Litigation Team at Drinker Biddle started having success in these cases, the Coventry Entities became increasingly difficult and attempted to erect various roadblocks to the Litigation Team's obtaining these critical documents. First, the Coventry Entities refused (somewhat arbitrarily) to produce "internal only" emails (Howard Decl. ¶ 3, Ex. B); then they insisted that the Litigation Team have

5

the subpoenas served on them through a non-Drinker Biddle counsel; and finally they began to insist that the Litigation Team move to compel to obtain anything more than basic policy files. But in all prior cases, Coventry's various objections were resolved, one way or another; the Coventry Entities produced the necessary documents; and the courts relied upon them to strike down the policies as illegal human life wagers.

In this case, however, Coventry has ratcheted its obstructionist tactics up another notch. Indeed, this is the first case in which the Coventry Entities are flatly refusing to produce any of their documents, falsely claiming that there exists a conflict of interest between Cozen O'Connor and the Coventry Entities, and that this (non-existent) conflict allows the Coventry Entities to shirk their obligations to produce the very same categories of documents that Coventry has produced many times in the past and that courts across the country have relied upon many times in the past to resolve these Coventry STOLI cases.[2]

**B. There Is No Conflict of Interest**

With the exception of Coventry Capital I LLC—for which Cozen O'Connor provided limited, unrelated legal services— and Coventry First LLC—for which Cozen O'Connor provided unrelated legal services which ended over six years ago—none of the Coventry Entities was ever a client of the Firm, and none, including Coventry Capital I LLC and Coventry First LLC, is or was a current client of the Firm when the Firm was engaged by Protective Life or when this matter was commenced or thereafter.  *See* Declaration of Douglas B. Fox ¶¶ 3, 4, 5.

In addition to the reality that the limited work performed by Cozen O'Connor for Coventry Capital I LLC and Coventry First LLC was completed in or about 2008 and 2015 respectively, and

---

[2] Coventry has adopted this tactic in another case that is being litigated on a similar timeline. *Estate of Ann Rink v. VICOF II Trust*, Case No. 5:20-cv-00039-KDB

was not substantially related to the present case, this work was also all completed prior to the arrival at the Firm of all of the lawyers who work on this case.[3] Out of caution, those lawyers (i.e., the "Litigation Team") were screened from accessing all closed matters that the Firm previously handled for Coventry Capital I LLC and Coventry First LLC. *See* Fox Decl. ¶¶ 5, 6, 7, 8.

At the request of Coventry First LLC, however—and even though there is no actual conflict of interest—Cozen O'Connor has previously agreed as a business courtesy to use other counsel, here Mr. Norton, to serve subpoenas on Coventry First LLC and any other related entity, including the Coventry Entities here. Coventry First LLC has previously acquiesced in this arrangement. *See* Fox Decl. ¶¶ 9, 10, 11. As noted above, the practice of using a separate law firm to handle subpoenas in Coventry-related cases like this has been going on for years, in cases around the country, and Coventry First LLC and the Coventry Entities have—until recently and in this case in particular—made full and complete document productions.

C. The Coventry Entities' Claims Are Baseless

The subpoenas at issue were served on the Coventry Entities on or about February 24, 2021. Howard Decl. ¶ 4, Compendium Ex. C. On March 15, 2021, the Coventry Entities, by and through their counsel at Williams & Connolly LLP, objected to the subpoenas and stated that "[a]bsent information definitively establishing that Cozen O'Connor played no role with respect to the drafting, content, or execution of the Subpoenas, [the Coventry Entities] will not respond to the Subpoenas." Howard Decl. ¶ 5, Ex. D at 1-2. In this regard, the Coventry Entities baldly stated that "the Subpoenas' content . . . is clearly based on Cozen O'Connor's insider knowledge of the

---

[3] The majority of the Cozen O'Connor lawyers who handle STOLI litigation arrived at the Firm in April 2018 from Drinker Biddle. In addition, Chase Howard (who has been admitted *pro hac vice* in the D.C. Action) did not graduate law school until 2018, and Chad Kurtz previously acted as local counsel but never worked on the merits of the D.C. Action. Molly Rucki currently acts as local counsel and does not work on the merits of the D.C. Action.

7

[Coventry Entities'] business to target specific information, the existence of which would not be publicly known." Howard Decl. ¶ 5, Ex. D at 3.

The Coventry Entities' core claim—that the Litigation Team used confidential "insider knowledge" to craft the Subpoenas—is wrong on many levels, including because the Subpoenas served on the Coventry Entities in this case are substantially identical to subpoenas served on Coventry in prior cases by the Litigation Team *prior its arrival at Cozen*.  In the *Corwell* case,[4] for example, members of the Litigation Team represented Sun Life in a STOLI action similar to the instant Action.  The Litigation Team (through subpoena counsel as a courtesy) served substantially identical subpoenas on Coventry in that action in March 2018, prior to the Litigation Team joining Cozen O'Connor.[5]  Howard Decl. ¶ 6, Compendium Ex. E (the "*Corwell* Subpoenas").  These Subpoenas, which were filed on the public docket back in 2018 and remain publically available on that docket to this day, could not possibly have been created using any alleged confidential information allegedly held by Cozen O'Connor because the Litigation Team had not yet joined Cozen O'Connor.  The fact that the instant Subpoenas were derived from and

---

[4] *Sun Life v. Wells Fargo Bank*, Case No. 17-cv-06588 (N.D. Ill.).

[5] The Subpoenas served on the Coventry Entities in the instant case are substantially identical to the subpoenas served on Coventry in the *Corwell* case.  For example, Requests 1 and 2 of the *Corwell* subpoenas seek documents referring or relating to the policy or the insured (Robert Corwell).  Likewise, Requests 1 and 2 of the Subpoenas served upon the Coventry Entities here seek documents concerning or referring to the policy or the insured (Nelson Deckelbaum).  Howard Decl. ¶ 4, Ex. C; ¶ 6, Ex. E.  Request 7 of the *Corwell* subpoenas seek "agreements between or among the Involved Persons related to Robert Corwell, the Policy, or any of the trusts . . . including any general agreements concerning procurement, purchase, funding, sale, or transfer of life insurance policies or any interests therein that would apply to, govern or relate in any way to Robert Corwell, the Policy, or any of the trusts identified."  Likewise, Request 4 of the Subpoenas served upon the Coventry Entities is nearly identical, and seeks "agreements involving one or more of the Involved Persons related to the Insured, the Policy or the Policy Control Agreement, including any general agreements concerning procurement, purchase, funding, sale, or transfer of life insurance policies or any interests therein that would apply to, govern, or relate in any way to the Insured [Nelson Deckelbaum], the Policy or the Policy Control Agreement."  Howard Decl. ¶ 4, Ex. C; ¶ 6, Ex. E.  The similarities between the subpoenas go on and on.

8

are substantially identical to the subpoenas drafted and served on the Coventry Entities prior to the Litigation Team's arrival at Cozen O'Connor is fatal to Coventry's bald allegation that the Subpoenas at issue here were somehow created through "insider knowledge" and should be dispositive of the Coventry Entities' entire conflicts claim.

After the Litigation Team joined Cozen the following month, Coventry voluntarily produced certain of its responsive documents in the *Corwell* matter and was later forced to produce additional documents. Howard Decl. ¶ 7, Ex. F. This motion to compel in *Corwell* was litigated *after* the Litigation Team arrived at Cozen O'Connor, and although Coventry resisted producing certain of its documents on other grounds, Coventry did not argue that some alleged conflict precluded production. Howard Decl. ¶ 8, Ex. G.

### D. The Coventry Entities' Continued Refusal

Coventry's counsel at Williams & Connolly does not state what level of information would satisfy its demands, and it is self-evident that Williams & Connolly and the Coventry Entities have no interest in reaching an actual resolution. Indeed, on April 27, 2021, Cozen O'Connor wrote to Williams & Connolly in an attempt to resolve this dispute. Cozen O'Connor explained that there is no conflict and that, per the Firm's past practice of using a different law firm to serve subpoenas—which was always done solely as a courtesy—there was no basis for the Coventry Entities' position or their refusal to produce documents. In response, Williams & Connolly complained of Protective Life taking too long to respond to the objections, time Cozen O'Connor used to further investigate the conflict of interest allegations the Coventry Entities' raised.

A meet and confer conference occurred on May 17, 2021, and Protective Life and the Coventry Entities were unable to reach resolution. On June 3, 2021, the Court presiding over the D.C. Action held a pre-hearing in an effort to resolve the dispute between the Coventry Entities

9

and Protective Life without the necessity of a motion. At the June 3 hearing, Williams & Connolly argued that the D.C. Court did not have jurisdiction to decide a motion to compel against the Coventry Entities, an argument Williams & Connolly never raised during the parties' meet and confer on May 17. According to Williams & Connolly, any motion to compel should be brought in this Court (E.D. Pa.) alone. In an effort to avoid arguing over jurisdictional issues, on June 11, 2021, Protective Life re-issued the Subpoenas directing compliance in the Eastern District of Pennsylvania. Howard Decl. ¶ 9, Compendium Ex. H. On June 18, 2021, the Coventry Entities, through Williams & Connolly, once again lodged objections identical to those first lodged on March 15, 2021. Howard Decl. ¶ 10, Ex. I.

Despite the lack of any actual ethical conflict; the existence of a prophylactic screen; the use (as agreed) of third-party subpoena counsel; and the fact that the content of the Subpoenas is substantially similar to the content of subpoenas served on Coventry before the Litigation Team arrived at Cozen O'Connor—and even though the Coventry Entities admit the critical point that they are, in fact, in possession of responsive, discoverable documents—the Coventry Entities continue to refuse to produce any documents at all. Protective Life has no choice but to seek to compel the Coventry Entities to comply with the Subpoenas, and requests an order compelling them to produce all responsive documents promptly.

## II. ARGUMENT

### A. The Coventry Entities' Refusal to Produce Responsive Documents in Their Possession, Custody, and Control Violates Rules 26 and 45.

Under Rule 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . . Information within this scope of discovery need not be admissible in evidence to be discoverable."

Fed. R. Civ. P. 26 (a)(1). Under Rule 45(d)(2)(B)(i), "the serving party may move the court . . . for an order compelling production or inspection." Fed. R. Civ. P. 45(d)(2)(B)(i).

Here, the Coventry Entities do not dispute that they are in possession of documents discoverable in this case under the parameters of Rule 26, and which can be compelled through Rule 45. Indeed, setting aside their boilerplate scope objections (which are so obviously infirm that they deserve no separate discussion here), the Coventry Entities are really just objecting to the *process* by which the Subpoenas were issued, claiming a non-existent conflict of interest with Cozen O'Connor somehow makes the Subpoenas invalid and allows them to evade their obligations under Rule 45. As explained below, this excuse is facially false and merely a delay tactic. But regardless, this alone is not enough to excuse compliance under Rule 45, and by having failed to move to quash the Subpoenas or to obtain a protective order, the Coventry Entities' objections do not justify their failure to produce documents—which actually amounts to active concealment of highly relevant information.

**B.   The Coventry Entities' Excuses Are Demonstrably False.**

It is undeniable that there is *no actual issue* between the Firm and the Coventry Entities. This is true for a host of reasons.

*First*, even according to the Coventry Entities, they are not current clients but instead are alleged to be former clients of the Firm; the Firm thus allegedly handled, in the past, "numerous matters [for the Subject Entities] for approximately twenty years," and this work allegedly included "substantially related litigation" where the Firm supposedly represented the Coventry Entities. Howard Decl. ¶ 10, Ex. I at ¶ 1. The Coventry Entities also claim that the Firm possesses their "sensitive business information" and is somehow using that information in connection with the subpoenas. But nearly all of this is demonstrably false because—with the exception of

11

Coventry First LLC and Coventry Capital LLC—none of the Coventry Entities was or is a client of the Firm; the Firm is not in possession of any of so-called "sensitive business information" from these non-clients; and the assertions they are making have no factual support. No such matters are identified. None of them concerned Protective Life. None of them involved pursuing an action by an insurance company seeking to have a life insurance policy declared *void ab initio*. None of them involved litigation in the District of Columbia.

*Second*, as a courtesy to Coventry First LLC, which was a former client in unrelated matters, the Firm's practice has been to delegate other counsel, such as Mr. Norton here, to handle the issuing of subpoenas directed to any entity related to Coventry First LLC. This practice has been satisfactory to, and accepted by, Coventry First LLC for years, and thus any objection to doing the same thing here was waived long ago.

*Third*, out of an abundance of caution, the Firm instituted an ethical screen to proactively screen the Cozen O'Connor lawyers representing Protective Life here (and in similar cases) from any information related to the Firm's unrelated past representation of Coventry First LLC and its exceedingly limited, unrelated past work for Coventry Capital I LLC. Thus, although the Firm has no "sensitive business information" from the Coventry Entities or any related entity, as a practical matter, no lawyer, paralegal, or other person staffed to the merits of the D.C. Action has ever had access to any of the other information the Firm may have received from its prior work for Coventry First LLC and Coventry Capital I LLC. Accordingly, the Coventry Entities' bold claim that the Subpoenas' content was "clearly [ ] based on Cozen O'Connor's insider knowledge of [their] business" (Howard Decl. ¶ 10, Ex. I at ¶ 1) is wildly unfounded—both because the Firm does not have that knowledge from any prior representation to begin with, and because, even if it did, the ethical screen prevented its dissemination.

12

Indeed, on this issue of so-called "insider knowledge" and "sensitive business information," the Coventry Entities seem to suggest they are invoking Rule 1.9(c), which provides:

> (c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:
> (1) use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, *or when the information has become generally known*; or
> (2) reveal information relating to the representation except as these Rules would permit or require with respect to a client.

Pa. R. Prof. Conduct 1.9(c) (emphasis added).

But even if the Firm had any of the Coventry Entities' "sensitive business information," the information used in connection with the Subpoenas has come from the public record through other litigation involving various STOLI policies procured through the same STOLI scheme at issue in this the D.C. Action. As discuss *supra*, the subpoenas issued in the D.C. Action are substantively identical to the *Corwell* subpoenas which were issued before the Litigation Team arrived at Cozen O'Connor. Moreover, much of the information known to the lawyers involved in the D.C. Action and to the public in general actually comes from a lawsuit the Firm was not involved in, captioned *Lavastone Capital LLC v. Coventry First, LLC et al.*, No. 14-7139 (S.D.N.Y). The publicly-available documents in that case—all of which were publically disclosed *by Coventry* and its former partner in the life settlement business, Lavastone Capital—lay bare the scheme that underlies this case, establishes that the Coventry Entities have relevant and discoverable information pertaining to this STOLI Action, and further puts the lie to any assertion that the Firm is somehow using "insider knowledge" in connection with the subpoenas.

This aside, courts routinely hold that an ethical screen protects the interests of the Rules of Professional Responsibility, so even if there were an issue (and there is not), it is rectified by the

13

screen. *Mendelson v. Morning Call*, 2006 Pa. Dist. & Cnty. Dec. LEXIS 646 *24 (Pa. D.&C. 2006) ("screening is the process through which a lawyer with client confidences from a prior association is separated from other lawyer in his or her firm so that the firm can avoid disqualification by imputation"). In other words, even if a lawyer at Cozen O'Connor was somehow disqualified under Rule 1.9, the disqualification is not imputed onto the entire firm, including the lawyers involved in this action, where Rule 1.10 is adhered to:

> (a) While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by [Rule 1.9] . . . unless permitted by Rules 1.10(b) or (c).
>
> (b) When a lawyer becomes associated with a firm, the firm may not knowingly represent a person in the same or a substantially related matter in which that lawyer, or a firm with which the lawyer was associated, had previously represented a client whose interests are materially adverse to that person and about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(c) that is material to the matter unless:
>
> > (1) the disqualified lawyer is screened from any participation in the matter and is apportioned no part of the fee therefrom; and
> > (2) written notice is promptly give to the appropriate client to enable it to ascertain compliance with the provisions of this rule.[6]

Pa. R. Prof. Conduct 1.10. Here, despite the lack of disqualification under Rule 1.9, Cozen O'Connor implemented a timely screen and informed Coventry of this nearly three years ago. Fox Decl. ¶¶ 6, 7, 8, 9.

---

[6] Comment 4 to Rule 1.9 poignantly addresses imputation when former clients are at issue: "Rule [1.9] should not be so broadly cast as to preclude other persons from having reasonable choice of legal counsel. . . . If the concept of imputation were applied with unqualified rigor, the result would be radical curtailment of the opportunity of lawyer to move from one practice setting to another and of the opportunity of clients to change counsel." Pa. R. Prof. Conduct 1.9 cmnt. 4. The Coventry Entities seek to forever forbid Cozen O'Connor from issuing subpoenas to them in actions where the Coventry Entities are not parties and their interests are not implicated at all because Cozen O'Connor provided legal services to two of the Coventry Entities in matters unrelated to the present matter years before the Litigation Team joined Cozen O'Connor. To impute conflicts on the Cozen O'Connor lawyers involved in the D.C. Action would "broadly cast" Rule 1.9 with the very "unqualified rigor" that Rule 1.9 warns of.

*Fourth*, and in any event, Rule 1.9 cannot apply here.  This is because to implicate Rule 1.9, the Coventry Entities would first need to show that they are former clients of the Firm, and then establish that the Firm is representing Protective Life "in the ***same or a substantially related matter*** in which [Protective Life's] interests are ***materially adverse*** to the interests of [the Coventry Entities]."  Pa. R. Prof. Conduct 1.9(a).  As already discussed, of the Coventry Entities, only Coventry First LLC and Coventry Capital I LLC were former Cozen O'Connor clients.  But even that work was not "substantially related" to this D.C. Action, and nothing about this D.C. Action is materially adverse to the Coventry Entities.

Indeed, "[m]atters are 'substantially related' for purposes of this Rule if they involve the same transaction or legal dispute or if there otherwise is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter."  Pa. R. Prof. Conduct 1.9 cmnt. 3.  But because the Firm never represented any of the Coventry Entities in any transaction or legal dispute that was the same as what is at issue in the D.C. Action, and because the Firm has robustly protected against any Coventry-related information being transmitted to the Litigation Team, the "substantially related" element cannot be met here.  Further, the Coventry Entities' interests are not materially adverse.  The Coventry Entities are not even parties to the D.C. Action, and they have no interest in the Policy at issue at all.

*Fifth*, the Coventry Entities waived any purported conflict of interest.  For years, Coventry First LLC and other related entities have produced documents in response to Rule 45 subpoenas issued by parties represented by Cozen O'Connor in STOLI litigation.  Until now, Coventry has never raised a former client conflict with any court seeking to preclude a document production based on unrelated services Cozen O'Connor performed for Coventry First LLC many years ago.

15

Indeed, the Coventry Entities even admit that the Subpoenas they now seek to evade are "identical to subpoenas served on the [Coventry Entities] in prior cases in which Cozen O'Connor was counsel[.]" Howard Decl. ¶ 10, Ex. I at ¶ 1.

It is well established that a party's failure to seek disqualification constitutes waiver of any purported conflict. *E.g.*, *O'Brien v. Middle E. F.*, 2020 WL 7335468, at *2–4 (E.D. Pa. Dec. 14, 2020) (former client waived right to seek disqualification where he failed to move to disqualify plaintiff's attorney in five previous actions); *Delaney v. Dykstra Assocs., Inc.*, 2020 WL 3864976, at *6 (NJ. Super. Ct. App. Div. 2020) (same where former client had been involved in previous litigation against defendants "and their related business entities regarding essentially the same dispute, and never moved to disqualify" defendants' counsel); *Javorski v. Nationwide Mut. Ins. Co.*, 2006 WL 3242112, at *8 (M.D. Pa. Nov. 6, 2006) (defendant failed to seek disqualification in previous cases involving same lawyer and same types of claims, and court found "that these facts alone constitute waiver"). The time for Coventry to raise any purported conflict passed many years ago—not *after* Coventry has routinely produced documents in response to nearly identical subpoenas.[7]

**C. The Coventry Entities' Boilerplate Objections Cannot Stand.**

The Coventry Entities lodge additional, boilerplate objections, which include, among other things, an objection that the Subpoenas are overly broad and unduly burdensome and an objection that the Subpoenas are not relevant to the claim or defense of any party and are not "reasonably

---

[7] Further, Rule 1.10(b)'s command that a firm give written notice to a former client regarding an ethical screen is plainly indicated in the rule—"to enable [the former client] to ascertain compliance with the provision of this rule." Pa. R. Prof. Conduct 1.10(b)(2). As stated *supra*, Cozen O'Connor notified the Coventry Entities of the screen and the lawyers joining Cozen O'Connor, who regularly subpoenaed the Coventry Entities for years prior to their joining of Cozen O'Connor. Yet, after this communication, the Coventry Entities never claimed Cozen O'Connor was not complying with the Rules of Professional Conduct.

16

calculated to lead to the discovery of admissible evidence." These objections are made under the heading "General Objections," which are then reiterated without any specificity at each specific request. Boilerplate objections such as these are clearly improper and must be struck. *See, e.g.*, *SmithKline Beecham v. Apotex Corp.*, 2006 WL 279073 at *2 (E.D. Pa. 2006) ("Mere recitation of the familiar litany that . . . a document production request is 'overly broad, burdensome or oppressive' will not suffice."); *Grider v. Keystone Health Plan Cent.*, 2007 WL 2874423 at *6 (E.D. Pa. 2007) (holding that a party alleging a document request is unduly burdensome must "demonstrate with specificity and factual detail the exact nature and extent of the burden."); *Griffin-El v. Beard*, 2009 WL 678700 at *28 (E.D. Pa. 2009) (ordering a party to produce documents where the party failed to seek a protective order or submit an affidavit "providing specific information regarding the time, cost, or specific burden they face in complying with [document requests]."); *Grossman v. First Pa. Corp.*, 1992 U.S. Dist. LEXIS * 7 (E.D. Pa. 1992) (holding that a party "may not determine on its own what is relevant for discovery purposes").

The reason Coventry fails to substantiate its specious allegation that the requested documents are not discoverable is that Protective Life is seeking here the same categories of documents that the Coventry Entities have been producing in Coventry STOLI cases for years. As noted, these documents generally fall into three categories: (i) the documents memorializing and effectuating the Deckelbaum transaction; (ii) Coventry's internal and external communication regarding the Deckelbaum Policy; and (iii) the documents memorializing and effectuating the Coventry STOLI Program itself. All of these categories of documents are highly relevant to this case; have been produced in prior cases; have been cited to by the parties in numerous summary judgment briefings; and have been relied upon by numerous courts in rendering summary judgment decisions. Moreover all of these categories of documents are easily obtained: The Policy

specific documents exist in Coventry's Policy specific files and/or can be obtained through simple keyword searches (the insured's last name, the policy number, and Coventry's unique transaction number), and the Coventry program documents are not numerous and all or nearly all of them have already been collected and produced in past cases. There is no serious argument that the requested documents are not discoverable; Coventry advances none; and its boilerplate objections should be dismissed out of hand.

### III.  CONCLUSION

For these reasons, Protective Life respectfully requests that the Court strike the Coventry Entities' objections to the Subpoenas and order that they promptly produce all responsive documents.

Dated: July 12, 2021

Respectfully submitted,

COZEN O'CONNOR

/s/ Chase Howard
Chase A. Howard, Esq.
Joseph M. Kelleher, Esq.
Cozen O'Connor PC
1650 Market Street, Suite 2800
Philadelphia, PA  19103
Tel. (215) 665-2147
jkelleher@cozen.com
chasehoward@cozen.com

*Attorneys for Plaintiff*